The next case for argument is Cinnamon Mills v. Target Corporation May it please the Court, Jeffrey Wall for the Defendant and Appellant, Target Corporation. If I may, I'd like to reserve five minutes for rebuttal. California Labor Code Section 227.3 states, in relevant part, whenever a contract of employment or employer policy provides for paid vacations and an employee is terminated without having taken off his vested vacation time, all vested vacations shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served. What this case is about is what does the term final rate in Section 227.3 that I just read means. Does it mean that you pay the employee upon termination for a vested vacation at the same final rate that he would have been paid for a vacation if he had taken it? Or does it mean that you pay him at the final rate of wages, even though that wasn't the rate he would have been paid if he had been taking his vacation? Counsel, what if an employee got a $2 an hour pay increase and then was fired the following day? What does the law require? The only relevance of the $2 an hour pay increase would be if his vacation pay, as set by the employer's contract, said that whatever your base rate is will be your vacation rate. So if that's the contract, whatever your base rate is, that's what you're going to get. And the employee was given a $2 an hour pay increase and then was fired or left the employee, he would get his vacation pay at that rate, the additional $2. But that's not because of some statutory provision. That's because that's what the contract provided for. And the statute comes in to say whatever the contract provides for as the final rate of vacation paid, that's what you pay the employee when he leaves. So in this case — So I take it that — Yes. Your purpose, obviously you have a second fallback argument that it wasn't willful in this case because of either ambiguity or uncertainty about this. But if we were to determine that the final rate is, as Cinnamon Mills suggests, and that is not just the final rate of wages but including this differential, then I would — is it correct that going forward under the state law, Target would have to calculate that way? If the ruling of the court is that's how you do it, then of course Target is going to comply with the law and would do it that way. Right. But we respectfully disagree. Understood. And so the issue in this case was, as Judge McAllen just said, a plaintiff was earning $13 an hour, plus she got a shift differential of an extra $2 temporary during the COVID period. It's not disputed that if she had simply taken the vacation that was cashed out to her at the time of termination, but let's say she didn't terminate and just carried on, there's no dispute she would have been paid $13 an hour and plaintiff wouldn't have a claim for the extra $2. And that's because Target's consistent policy and practice is to pay vacation at the base hourly rate. So the only issue is, because Target did pay the extra $2 shift differential, by virtue of Section 227.3, does that mean that that's the final rate for vacation pay? And we can point to a lot of reasons why that's not so. So I'd like to look at the text of the statute. As I read it, I read as wages at his final rate as a clause altogether. And if that's the case, so just imagine that there's commas between two, as wages at his final rate. If that clause is meant to go together, it's most natural to read that as final rate as referring to wages. What's wrong with that reading? So I think a couple things. First off, I think the reason why they put in wages is they wanted to make clear that if the employee terminates, the employer can't say, well, that's fine, but if you want your vacation, you have to take it. So we'll just pay it out over time. Yeah, I agree it has that purpose. But also at his final rate is closest to wages, so why wouldn't we read that in light of the word wages right before it? So final rate comes after wages, that's true. But then it precedes the next clause, which says, in accordance with such contract of employment or employer policy respecting eligibility or time served. And so — But as I was saying, I think you take as wages at his final rate and put commas in between it. So therefore, in accordance with would then refer to back to him and some — But there is no comma there. I know. But if — It all goes together. Would you agree that that's the best reading, is that final rate refers to wages? I would agree that if there were a comma or other indication the final rate was intended to be wages, final rate of wages, that argument would have more force. But I don't think that's how the statute reads. And I also think that we have these different points of, I would say, at least persuasion, if not authority, why that's not the right construction. First off, it is elemental under California law that vacation is a creature of contract. There's no statutory entitlement to vacation. And the Supreme Court in Swatesta has made clear that the employer is free to pick whatever rate of vacation pay it wants to pay. It could pay the base rate, and usually it is the base rate. But if the employer wanted to pay less, it could. It probably wouldn't be a very smart competitive thing to do, but it could if it wanted to. So that's number one. Number — Sorry. Yes. Is Target's reading that you would include — you would add final vacation rate? Is that what we're supposed to imply, impliedly read? We believe final rate means final vacation rate. And the reason why that makes sense is if it weren't that case, then Ms. Mills gets an extra 2 bucks an hour because she's terminated, as opposed to someone who takes the vacation. I agree from a policy perspective. That seems odd. But I'm just — but we're bound by the statute. But — But you want to insert, in effect, insert a word into the statute, vacation. Well, the word says final — the term is final rate. Correct. So Judge Bumate is posturing that, gee, it comes after wage, so it must mean final rate of wages, but it doesn't actually say that either. And it is followed by in accordance with the contract. So that is the statutory question. Yeah, but there's a respecting in there, in accordance with such contract of employment or employer policy, respecting eligibility or time served. Eligibility. But the DOSC has opined that actually that means whatever the contract rate of vacation pay is, that's what you pay. So we have the DOSC on record in an opinion that's never been withdrawn, that you looked at the contract, and that's the rate you pay. And in that opinion letter, which we cite to you, it is explicit — and just be clear, this is the January 20, 2003, opinion letter. It is explicit that even if the compensation rate included shift differentials, commissions, bonuses, whatever, it doesn't matter. If the employer policy is vacations paid only at the base rate, then that's only what you get. So, I mean, I didn't — we're not bound by those, obviously. That's correct. But it did seem to me that looking at the 2000 opinion, that that's not even the position that you're advocating, really, directly. Well, it is. Although I suspect what you're focusing on is also the part about if the rate drops, they still have to respect the higher rate. Right. And that's — respectfully, that's not before this Court. There is no issue target to not drop the rate. There's no issue about that. And I think that's debatable. I think the DLA's point of view, and they try to enforce these things under fair and equitable principles, that's what the statute requires them to do, is it would be unfair if someone earned vacation at a higher rate to then get paid out at a lower rate. But that's not the issue in this case. Right. But my point is that we have, it seems to me, an opinion that doesn't really dovetail with the exact issue here, and we're not bound by it anyway. So aren't we really back to the statute? So I would respectfully say that the opinion does dovetail with us, at least in the point that I'm making, which is, and they were very explicit in the opinion, doesn't matter what the wage rate is, you pay based on the contract rate. And then we have DRUM, and, of course, that's a district court opinion, so not binding this Court either. But that is a case in which the Court did reason through, all right, what's the rate of pay for vacation pay, what's the rate of pay for waiting time penalties, and was explicit that although waiting time penalties you include all the wages in, for vacation pay you pay just what the employee would have received had he taken vacation. So we have the DRUM case, we have the labor DLSA opinions, and then respectfully we have the persuasiveness or authority of common sense. It doesn't make sense why you would penalize someone for continuing to work by being paid a lesser vacation rate and pay a windfall or benefit to someone  That doesn't really make any sense. Under your reading, what happens if the employer has no policy or, what is it, contract or policy regarding vacation pay? Well, of course, the employer doesn't have to have one. Right. So it may just be there is no vacation pay. Then the answer is you get paid nothing? Then there's nothing, because there's no requirement to pay vacation. But if the employer No, no. I'm saying there's no policy of vacation pay, but there's a policy on vacation. Well, the policy or practice of the employer is going to be viewed Let's put it this way. The practice of the employer is going to be viewed as the policy. So even if the employer doesn't have an express in writing policy, if the evidence is the practice is they always paid vacation, let's say in our case $13 an hour, the base rate, then that's going to be what's going to be adopted. So you're saying essentially employers always will have vacation pay? Well, employers won't always have vacation pay because they may just not pay vacation, but if they have a practice of paying vacation, then the court would view that as their policy, and under 227.3 will enforce it based on that policy. But your contention is that because there's no statutory requirement, this target could say we're paying three quarters. So all target can do, target can decide whether to pay vacation or what rate of vacation. But where 227.3 does come in is it says, okay, if you are paying vacation, then, number one, you can't force vacation upon termination, no use it or lose it. And, number two, when you pay vacation, vested vacation to the terminated employee, you have to pay him at the final rate of vacation pay. You can't disadvantage the employee by virtue of termination and paying him less or not paying him at all because he's terminating. You have to treat him just like he's a regular employee for purposes of vacation pay. Since this would, an interpretation of this statute would affect virtually every employer, private employer in California, do you think it's an appropriate kind of case to certify that question to the California Supreme Court? You certainly have the discretion to do so, and I would understand if you did that. I think you could reason through this based on what we presented and make the decision. And, as you know, the Ninth Circuit doesn't always certify cases to the State Supreme Court. I respectfully think this is actually a very straightforward case. I don't think it's a challenging case. It's just that if we happen to disagree with you, then I think what you're saying is it's straightforward from your perspective. But if we were to disagree with you, I guess you'd still take the same path, which is it's the kind of a statute that we should appropriately just interpret. I think so. And I think you can do that. I appreciate your candor. Of course. Now, I also want to mention. Before you move on, I'm sorry. Yes. What does final rate, final do under your reading? If there's vacation pay, if we're supposed to look at the employer's vacation pay, what does final do in that scenario? So let's say in year one the employee accrues 40 hours vacation pay, and the employer's policy is to pay at the base rate of pay, and he's making $13 an hour. So if he took vacation in year one, he would get it paid at $13 an hour. Now he comes into year two, and he gets a pay raise, $15 an hour. And, again, the employer policy is he's going to get paid vacation of $15 an hour. Now let's say the 40 hours that he accrued in year one he used 20, but he also did not use 20 more. So 20 now comes into year two. And now he starts accruing additional vacation pay. What the statute means is the employer can't say, well, if he terminates, you know what, we're only going to pay you for those first 20 hours $13 an hour, and then for the new hours we'll pay the $15. Instead, you have to pay everything at $15 an hour. That's the point. Final rate of vacation pay. You can't penalize the employee because the employee earned vacation at a lower rate. You pay him at his final rate because if he had taken vacation. Do employers usually structure their vacation pay that way? That seems an odd construction, but usually, I mean, normally as it is with Target, it's just your base rate, right? Right, but the base rate can change. And so the point is the employees are protected that if they've accrued hours under the old rate but then bring them forward to the next year and it happens that's when they terminate, they will get the benefit of the higher rate in that second year. But then really it seems like that would then override the policy. So say if, you know, Target's policy is I pay vacation rate at $10 an hour for first year, no matter when you take it, you're saying the statute overrides that policy? Well, but then it's saying, but then you're supposed to say in accordance with the policy. Respectfully, that's not the policy here. The policy is we pay vacation at your hourly base rate, whatever that might be. No, I'm saying, yeah, but under — but in order to give some use to final, you're saying if a policy has different pay rates for different years, you have to pay the final rate. You have to pay whatever. But then that violates the policy. Well, the statute would override the policy in that regard because the statute is saying whatever the final rate is, whatever is the current vacation pay rate regardless of what he earned, regardless of that rate, you have to use the final rate. So we're supposed to follow the policy except then, okay. But I think they are consistent because, again, in this case, the base rate, base hourly rate is the rate that Chargott pays vacation, whatever that might be, and therefore in the year that she terminated, Plaintiff was paid what her base rate was for those 18 hours of vested vacation. And so, you know, I read this, though, and I still have trouble wondering why the final rate isn't what the individual is being paid, which includes the differential. Well, if that were the case, then, again, a terminated employee gets a better deal in terms of vacation time than the current employee does who takes the vacation because there's no question, the point is not arguing otherwise. If Ms. Mills had not been terminated and instead had just continued on and said, I want to take 18 hours of vacation, she would have been paid $13 an hour. Correct. Their position is simply. But let's say she didn't continue on. I mean, she didn't leave now, but she leaves a year from now, and the base rate has now gone up to 15. Yes. Then she's paid at 15. Whatever the final rate of vacation rate is. And you could argue then, well, that seems a little unfair. I mean, she decided to roll over her vacation, and now she gets the benefit of subsequent years' rate. So that doesn't seem to me to be a lot different than saying if she leaves now, she gets the benefit of whatever it is you're paying. Well, the difference is the statute does regulate that part of it and does say although you're free to pick whatever rate you want during the accrual period, when it comes to payout, whatever is the final rate of vacation pay, whatever it is that you would get if you took the vacation, that's what you have to get paid at. So it really boils down to what you're saying. It's the final rate of vacation pay, which in your view is the base rate. In this case. In this case. And their argument would be no, the final rate is whatever the rate was at that moment, not a base rate. A wage rate. It's a wage rate. Right. And just to be clear, if Target's policy was we're now going to start paying shift differentials and you get those as part of your vacation pay if you take vacation, then there would be no question she would be entitled to that payout upon termination. The undisputed fact here is that wasn't Target's policy. Target's policy was just the base rate, not with shift differential. I understand that was their policy, but then you want your policy to override the statute. If the statute is determined to be final rate means final rate of wages. I think it's consistent because whatever the policy is, that's the vacation rate, and whatever that rate is that she would have gotten if she had taken the vacation, that's the rate she's going to get her payout regardless of when she accrued the hours. So I think it's entirely consistent with the statute. I'm a little confused about the shift differential question. Yes. If she's given the option of coming in and volunteering, somebody says, look, I need somebody next week, but just for the week to work the night shift, and you get an extra $2 for working the night shift, and she gets terminated after that, what does she get? Again, it's whatever the policy says. So if the policy says we're going to pay you vacation pay based on just the base hourly rate, then upon termination she gets just the base hourly rate. But if the policy is, and that's what I was saying before, that we'll pay whatever your total compensation rate is. So if you take vacation, you're going to get your base rate and shift differential, then she would get that upon termination. That's not what happened here because that wasn't the policy. I have just a few minutes. I do want to just mention the Wang case. Oh, I'm sorry. I'm sorry. So what's your response to the argument that, you know, the text of the statute limits the policy to only eligibility of time served? You know, and it doesn't say anything about pay. Well, I believe what the legislature meant is it's simply that's a way of expressing the vacation policy. That is, the vacation policy is going to define eligibility, time served, the benefits, and so forth. I don't think that's intended to just limit how you enter the policy. And respectfully, again, that's not how DRUM looked at it. That's not how the DLSC looked at it. Okay. Do you want to reserve some time? I think I have just a couple minutes. Do I not? I'm sorry. Oh, you have two minutes. Okay, so I'll be very quick. Oh, total. Oh, total. Okay, then I'll be extremely quick and I'll reserve my two minutes. And I talk fast anyway. The Wang case, I just want to make clear in the Wang case, and I'm sure you will or already have, read that very carefully. Contrary to what the claim says, Wang does not say this is how you do a final vacation payout. Wang simply dealt with a situation where the employer was trying to shortcut paying vacation wages for continuing employees at the established contract rate by having an expedient of saying, if you accrue too much, we're going to cash you out at some lower amount. And that wasn't proper under the labor code. Wang does not say anything to the effect that if you terminate, here's how we define what the rate of pay is. So, again, I'm sure you want to look at that closely. And I'll stop with that. Thank you, counsel. Good morning, Your Honors, and may it please the Court. Neil Sani for the Plaintiff at Police, Cinnamon Mills. Your Honors, this Court's task in a diversity case like this one is to predict what the California Supreme Court would do when interpreting the statute. And the best evidence of that, of course, is the text. And I wanted to turn to three reasons why the text cannot support Target's interpretation. So, first, as Judge Blumenthal, you just mentioned, the natural reading of the sentence suggests that wages as final rate is its own phrase. And, of course, there aren't commas here. And I think the commas would make it a lot easier, and we, of course, wish they were there. But I don't think the absence of commas can then mean that the statute should be read kind of in an opposite manner simply because they're lacking that punctuation. Second, both Judge Blumenthal, you and Judge McKeown noted that Target's position requires deleting and adding words to the statute. So, effectively, deleting final out of final rate and adding vacation to be final vacation rate. And that's a much less natural reading than reading wages as final rate meaning to mean final wage rate. But I think the third point that I want to make is most important. The only claim to textual support for Target's interpretation is the in accordance with clause. So, Target rests its entire interpretation on the fact that rate should be set in accordance with such contract or policy by the employer. But that discards the last five words in that sentence, which I believe Judge Bybee mentioned, which is a limiting phrase that reflects the legislature's intent to limit the use of employer's policy or contract to the specified variables in that sentence, which is respecting eligibility or time served. Although respecting, you know, I looked at the dictionary. That generally means relating to. And why isn't the vacation pay related to vacation eligibility or vacation time served? Yes, Your Honor. I think respecting on its own is somewhat ambiguous, but I think that's where we go to the Suaztez decision. And I think it's very important. It's, of course, not directly resolving the issue presented, but is the only California Supreme Court case analyzing the text of Section 227.3. And in Suaztez, the issue there was whether the time of vesting is controlled by the statute or by the employer's policy. And the employer obviously argued that it was controlled by the policy. And they relied on the in accordance with language, just like Target does here. And the California Supreme Court rejected that reading. And I want to go to the end of that decision. Suaztez, the California Supreme Court, said the typical vacation policy provides that the amount of vacation time for which an employee is eligible depends on, among other things, the length of employment with the company and the title or position the employee holds. The legislature has left the determination of these variables to the employer or the bargaining table. You know, it's interesting. I actually think Suaztez is very bad for you because there's a sentence above that where it says the in accordance language, that passage only means that the amount of vacation pay an employee is entitled to be paid as wages is to be determined with reference to the employer's policy. Yes, Your Honor, and that's the sentence that Target quotes in its brief. I think read in context, what it means there, the amount of vacation pay, is not the dollar amount of vacation pay, but the hours of vacation pay. And I think the way we know that is both the following sentence and California state appellate courts after Suaztez have interpreted it that way. So in our brief, we cite the Bell v. H.F. Cox case, which said that Suaztez held that the last clause, quote, means that the employer's policy determines the amount of vacation time earned, typically based on the employee's language. So what are we supposed to do, just overtake what it says and read it? Because, you know, number one, it highlights the word amount, which usually that's a number. You know, you usually don't think of the amount of hours. You usually think of amount of pay. No, Your Honor, I respectfully disagree there. I think, like, if you look at Target's own policy, which is at ER 96 to 105, Target's policy only talks about the amount of hours. So, right, so Target's policy is entirely silent on the rate of pay. What Target's policy discusses is which employees are eligible for vacation, how long have they served at Target to get vacation, and, you know, basically the longer you've served at Target, like in most companies, the more vacation you get. And so I think Target's policy illustrates that employer policies typically concern eligibility or time served and how that factors in to the total amount of vacation paid. So you basically think in Suoztes, the California Supreme Court made a mistake by saying amount of vacation pay, that they meant amount of vacation hours? I think it was loose language, and I think the second sentence says amount of vacation time. And so, again, Suoztes does not directly control this question, so we're just looking for evidence to make that eerie prediction of what the California Supreme Court would do. And I think that Suoztes, coupled with the plain text of the statute, coupled with kind of the natural reading that I think has arisen in this discussion, shows that the in accordance with clause can't bear the weight that Target places on it. And I think, you know, that's not just our interpretation. We've talked a bit about the Labor Commissioner's views. In our brief at 28 to 29, we cite and quote from the Labor Commissioner's kind of current informal guidance on their website about vacation pay. And I know that's on the website, but California courts regularly accord kind of frequently asked questions and informal guidance on the Labor Commissioner's website, what they call consideration and respect. So that's not formal deference, of course. I don't think it even rises to skid more deference, but it's still an important data point as this court predicts what the California Supreme Court would do. And I also wanted to read that current guidance. So the Labor Commissioner has a paragraph about how vacation pay should be calculated, and I think it does two important things. And again, this is quoted at page 29 of our response brief. The Labor Commissioner writes, in contrast to how vacation pay may be earned, the calculation of vacation pay for terminating employees who have earned and accrued an unused vacation on the books at the time of termination must be prorated on a daily basis and must be paid at the final rate of pay in effect as the date of separation. And I think that shows that the Labor Commissioner agrees with us on two distinct points. First is that final rate means final rate of pay. But second and perhaps more important, though it's a little bit subtle, is the fact that the Labor Commissioner expressly recognizes that vacation pay for terminated employees is calculated in a way that is different in contrast to vacation pay for continuing employees. And so again, when this court is making that eerie prediction, it's relevant at least to take into account the views of the agency that enforces the statute. And I think, Judge McKeown, when you were discussing the 2003 opinion letter with my colleague on the other side, the 2003 opinion letter is a bit contradictory and does not support Target's position either. So the 2003 opinion letter directly says that the final vacation pay is not what controls. If the final vacation pay according to the employer's policy is lower than the previous vacation policy controls. And so I think, you know, we think the 2003 opinion letter is poorly reasoned. This court doesn't have to give it any deference. And even if this court credited it, it doesn't support Target's position. So it's really just a wash, and I think this court should stick with the text. What if we, you know, we've had a pretty lively discussion here as to which interpretation is correct. And on each side there's snippets either out of the DLSE opinions or of Supreme Court or how you read the statute. What if we were to assume that the legal interpretation, assume without deciding the legal interpretation is as you propose. The question then is, was Target's conduct willful? And I'd appreciate if you could address that because it would seem to me that the kind of discussion we're having and the uncertainty that has ensued as a result of either the absence of authority or the snippets of authority added together would suggest a lack of willfulness. And I would appreciate your thoughts on that. Yes, Your Honor. And I think our position on the willfulness question is pretty narrow. So there are kind of two steps. So first, willfulness under California law for Section 203 penalties is not the same as criminal willfulness or willfulness as we see in other contexts. It doesn't require this like reckless disregard of law. It requires an intentional act to refuse to do something commanded by the labor code. And what we're really talking about is the good faith defense. So that's a non-statutory defense that the courts and then it's now been kind of codified in California regulation that an employer can have a good faith defense even when they are willful. So, I mean, it's interesting. The California courts are actually split on whether it's an affirmative defense or it's part of the willfulness analysis. But regardless, our position is not that legal uncertainty cannot be the basis for good faith. So we agree that legal uncertainty can be the basis for good faith. But California courts are also clear that it creates a presumption of good faith that an employee can override if they can show that the employer did not in fact act in good faith. And all we're saying here is that the district court committed a legal error by concluding categorically that since the area of law was undeveloped, then the target necessarily acted in good faith. And we presented evidence in the district court showing that target did not undertake any effort, not any reasonable effort, but just no effort at all to determine whether its pay practices complied with the law. How would they have done that? How could they do that? They're here. Well, Your Honor, I think what it would require is just taking some steps, whether that is having a, like the corporate representative for target, this is at Dock at 55-2 at 15-20, admitted that there had never been any discussion as to whether shift differential should be included in vacation pay, that they were unaware of these DLSE opinion letters upon which the target's defense now rests. And so, and the vacation pay policy itself, right, at 104-105, says nothing about vacation pay rate at all. But does that, all of that is interesting, but where is the intent? Your Honor, we believe that where an employee can affirmatively present evidence showing that the employer did not make any effort to ascertain its legal obligations under the Labor Code, that can at least raise a material dispute of fact as to whether the employer acted in good faith. And I think that there's a, this court noted in the Hill v. Walmart case that the test is, quote, whether a reasonable jury could find that the employer's defense was unreasonable or was unsupported by evidence. And we think here, you know, that's a fact question and maybe we'll lose, but we think that showing that target did not undertake any inquiry at all as to whether its practices complied with the law is enough to at least, you know, suggest to a reasonable jury that that defense is unreasonable. And I do want to point this court to the Armenta case, which is a California Court of Appeal case. In that case, all the federal, it was about averaging, averaging under the Labor Code, whether you need to average for purpose of minimum wage, and all the federal courts that had decided that question under FLSA had gone the other way. And so if all that mattered was that there was, you know, a reasonable basis in law to make the argument, then the California Court of Appeal could not have found, as they did in that case, that the employer still did not act in good faith. And that's every single case that had gone the other way. And that's similar to, again, these are different statutes, but this court in Flores took the same approach when evaluating willfulness under the FLSA, and this court noted that the failure to investigate, that there was no, when the employer failed to investigate its obligations, that could be evidence of, you know, of not having good faith. So, counsel, look, this is a very close question, and it's been very ably briefed on both sides. Why shouldn't we certify this to the California Supreme Court? Yes, Your Honor, we would not object. Of course, it's within your discretion to certify the case to the California Supreme Court. If we do, should we certify both questions? I think if you do, I think it would be worth certifying both questions. And I did want to note, actually, if you don't have the language right in front of me, but the California Supreme Court, after briefing, granted a petition for review on a different good faith provision, and I can submit a letter later if it's helpful to the court, but on Section 1194.2b, which is the liquidated damages provision under the Labor Code. And in that case, the court of appeal had held that the employer had acted in good faith. California Supreme Court granted the petition for review, and the issue presented, if I could grab. Is it still pending? Yeah. It's not even been briefed, I believe, but the question is whether. But it's been accepted. It's been accepted. And that question. You could file, like, a supplemental 28-J. I will, yeah. It presents the question of whether an employer has to affirmatively take steps to investigate its obligations to act in good faith. So I do think that question, to the extent this court is going to certify the first question on Section 227.3, it should certify the second question, because clearly the California Supreme Court is thinking about it. That said, we believe, as I'm sure you're aware, that this text is clear and that the other tools of statutory construction, such as context, history, purpose, all weigh in favor of our interpretation. And I do think, to the extent this court thinks about tools other than text, in, like, the FARA case, the California Supreme Court made clear that it's adopted an interpretive rule in the context of the labor code that when there are multiple plausible interpretations, to choose the interpretation that's, you know, that's protective of workers. So to the extent this court believes that the text is. So what is your response to that? It seems like it is an odd policy or odd statute that would require Target to pay more to someone that's been fired than someone that's actually stayed at the job. I have several responses to that. And I think the first one is the one that you mentioned earlier, is that these kind of policy considerations should not impact this court's interpretation of the text, particularly when it's a federal court interpreting a state statute. And so I just think those policy considerations that are the theme of Target's briefing are really not permissible bases on which to rule. Second, I think it's important to recognize that terminated employees covers a large range of employees. So those are people who are fired for cause, but it also includes people who have been laid off for economic reasons. It includes people who've become disabled or died on their job. And so there are many different categories of workers that are covered by Section 2273's mandate. Third, I think since Target recognizes that these policy arguments are not kind of stand-alone bases for interpreting the statute, they try to invoke the absurdity canon. But I think this Court has been very clear that that's very strong medicine. One decision — I don't think it's absurd, but are there other statutes where California has expressed the policy interest in disincentivizing terminating employees? Because this would be — this seems to be like disincentivizing termination of employees, because you have to pay them more if you fire them. No, Your Honor. I think that supposed unfairness arises just — I do think it's important to note that that arises because Target has made a policy choice to pay its continuing employees the lower rate, right? So if — and Target — Counsel for Target admitted that there are some employees. I don't know what the breakdown is, but there are some major employers in the state who do include shift differentials and other forms of wages in their normal vacation pay policy. And so in those circumstances, for those employers, there would be no differential treatment at all between the terminated employees and the continuing employees. So it is true that under California law, Target has the prerogative to choose whatever it wants for its current employees. And, you know, Target could choose to pay them $20 a day, right? The vacation pay actually can be under the minimum wage. But the legislature made a determination that upon termination, the nature of that obligation changes from a contractual obligation to a statutory obligation. And so it's not odd that, you know, the equities in each case will vary based on the individual employer's policy. But I think that illustrates why this court can't decide the meaning of the statute based on the equities in a particular case. It has to go to the text. So unless this court has any further questions, I'll rest on the briefs. Thank you very much, Counsel. Thank you. So very briefly, since I don't have much time, with regard to certification in the California Supreme Court, there'd be no reason to certify the waiting time penalties order because that's well-established law. Barnhill, for example, where there was uncertainty in the law, the Court of Appeals didn't require any sort of inquiry by the employer. All employers are charged with knowledge of the law, recognize the law was uncertain, and therefore where the employer exercised the right of self-help, even though the court ruled that the employer should not have, did not raise any issue about liability for waiting time penalties. And also, the record is absolutely clear that, regardless of whether it was in writing or not, the consistent practice of Target was to pay vacation at the base hourly rate. There was no tribal issue of fact that they somehow departed from that. There was uncertainty about that. Everyone understood, including plaintiff, that if she had taken the vacation, she would have gotten it at $13 an hour, and therefore that is not an issue in the case.  It says final rate of pay, but doesn't explain what it means by final rate of pay. And final rate of pay, we submit actually means, again, vacation pay. And the DLSE has never withdrawn the 2003 opinion. If it really was intending to announce a different approach, it would have done that. And finally, I appreciate the emphasis on suestes. I do think contractual principles and suestes really control how you should interpret the statute. And with that, I think I'm out of time. Thank you, counsel. Thank you both for an excellent argument. This case is submitted.
judges: McKEOWN, BYBEE, BUMATAY